# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ETHEL TONEY, ) | |
| ) | |
| Plaintiff, ) | No. 10 C 06375 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| MICHAEL KINSCH, ) | |
| ZOBAIDA MASUD, ) | |
| PETE LAST NAME UNKNOWN, and ) | |
| CAPITAL ONE AUTO FINANCE, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ethel Toney alleges that Defendant Capital One Auto Finance, Inc. violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, (Count 2) and the Illinois Consumer Fraud Act, 815 ILCS 505/2, (Count 3) in connection with a vehicle financing agreement between Toney and Capital One.[1] Capital One has moved to dismiss [R. 46] both claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the motion to dismiss.

## I.

In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations. In September 2008, Ethel Toney contracted to buy a 2006 Dodge Charger from a car dealership, and Defendant Capital One agreed to finance the

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

purchase. R. 40 (Compl.) ¶¶ 30-37.² Toney, who was homebound and did not have a current Illinois driver's license, intended to only be a co-signer on the loan for her son, Vince. *Id.* ¶¶ 17-20. A salesman from the car dealership, Norwood Park Dodge, told Toney that if she entered into a financing agreement to buy the car, Vince would be able to refinance the vehicle in his name after four months of timely payments. *Id.* ¶ 18. The salesman also represented that Capital One would only finance the car if Toney paid $2,000 for a service contract. *Id.* ¶¶ 33-35. Toney provided the salesman with her expired driver's license and proof of her monthly income, which totaled $1,030 in social security disability insurance and widow's pension and benefits. *Id.* ¶¶ 24, 29. Toney also provided a $1,900 down payment and $220 to apply to insurance costs. *Id.* ¶ 25.

Toney asked the salesman to provide information about the refinancing program, and he promised he would fax it over after she signed the contract. *Id.* ¶ 36. The salesman did not leave a copy of the contract with Toney. *Id.* ¶ 26, 37. By September 17, five days later, Toney had not received the refinancing program information. *Id.* ¶ 38. She called the dealership and asked its owner and president, Michael Kinsch, why the information had not been sent, and he said he would fax it right away. *Id.* ¶ 38. The same day, Capital One sent Toney a welcome letter advising her that she should send all her car payments to Capital One. *Id.* ¶ 45.

---

²The opinion refers to the amended complaint at issue, R. 40, as the complaint for convenience's sake.

The next day, Toney still had not received the refinancing program information. *Id.* ¶¶ 39-40. She called the dealership again and this time spoke with a man who had never heard of the alleged refinancing program. *Id.* Afterward, Toney called Capital One and explained to a representative she was concerned that the credit application the dealership had submitted on her behalf contained incorrect information. *Id.* ¶ 41. When Toney asked the Capital One representative about the terms of the refinancing program that dealership personnel had described to her and her son, he told her that Capital One was not aware of such a program. *Id.* ¶ 42. The Capital One representative also advised Toney that Capital One had never required the car dealership to include a $2,000 service contract on the loan, contrary to what the dealership salesman had told her. *Id.* ¶¶ 33-35, 43. The representative assured Toney that Capital One would send her the paperwork it had received from the dealership after she faxed over her driver's license and proof of income. *Id.* ¶ 44.

On September 19, Capital One sent Toney a copy of the retail installment contract and credit application she had requested. *Id.* ¶ 46. Toney discovered that the contract had been backdated to September 6 and that the dealership had overstated her monthly income by $1,800. *Id.* Soon after, Toney began receiving harassing phone calls from the dealership, as well as calls from someone claiming to be with the Chicago Police Department. *Id.* ¶¶ 47-48. Toney called Capital One to determine the status of the contract and was told that the contract was binding. *Id.* ¶ 49.

On September 30, the dealership's finance manager, Zobaida Masud, left Toney a message stating that Capital One did not want her business. *Id.* ¶ 50. Toney then

3

called Capital One and spoke to a customer service representative. *Id.* ¶ 51. The representative from Capital One reported that he had told Masud to stop calling because Capital One was trying to "work things out" with Michael Kinsch. *Id.*

On October 5, Toney discovered that the car had been repossessed. *Id.* ¶¶ 52-53. The next day Toney called Capital One to tell them about the repossession, and a company representative told her that Capital One had not authorized the repossession. *Id.* ¶¶ 54-55. On that same day, Capital One withdrew $592.16 from Toney's checking account via an "auto check payment." *Id.* ¶ 56. About one week later, Norwood Park Auto Sales, a dealership under the same ownership as Norwood Park Dodge and located at the same address, advertised online Toney's repossessed car for sale. *Id.* ¶ 60.

Toney received her final communications from Capital One in November. First, Capital One sent Toney a letter informing her that Norwood Park Dodge had repurchased her contract. *Id.* ¶ 61. On November 10, Capital One sent Toney an "overpayment refund" of $193.59. *Id.* ¶ 62. Finally, on November 20, Capital One sent Toney a letter to tell her it was releasing any security interest it had in the 2006 Dodge Charger. *Id.* ¶ 63.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

4

*Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When ruling on a defendant's motion to dismiss, the Court must accept the plaintiff's allegations as true and draw reasonable inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010).

### III.

### A.

Capital One first argues that Toney's Equal Credit Opportunity Act claim must be dismissed because Capital One's reassignment of the contract was not an "adverse action" under the statute. R. 46 (Def.'s Br.) at 4. To consider this claim, the Court must first examine the plain language of the statute. *See Barma v. Holder*, 640 F.3d 749, 751 (7th Cir. 2011) ("In ascertaining the meaning of a statute, we begin with the plain language.").

The Equal Credit Opportunity Act requires creditors that take an "adverse action" against a credit applicant to provide the applicant with "a [written] statement of [specific] reasons for such action" or "written notification of adverse action" that discloses the applicant's right to a written statement of reasons for the adverse action. 15 U.S.C. § 1691(d). The statute defines "adverse action" as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant

5

credit in substantially the amount or on substantially the terms requested." § 1691(d)(6). The statute also gave the Federal Reserve Board the power to implement regulations to carry out the Act's purpose. *See* 15 U.S.C. § 1691b(a). These regulations further define "adverse action" as, in pertinent part, a "refusal to grant credit in substantially the amount or on substantially the terms requested in an application," and a "termination of an account or an unfavorable change in the terms of an account." 12 C.F.R. § 202.2(c)(1)(i)-(ii).

Toney argues that Capital One "refused to grant credit on the contract's terms" by reassigning the financing contract to the car dealership. R. 48 (Pl.'s Resp.) at 4-5. But, accepting the facts in the complaint as true, at no point did the *terms* of the financing contract change. Rather, Toney's obligations under the contract remained the same. *Cf. Nevarez v. O'Connor Chevrolet, Inc.*, No. 02 C 3568, 2005 WL 675824, at *9 (N.D. Ill. Mar. 21, 2005) (finding that a higher down payment and the addition of a co-signer qualify as "new terms"). Capital One's reassignment resulted in a new lender (or more precisely, a new owner of the loan); it did not change the terms of Toney's contract.

Toney also argues that Capital One terminated her account through the reassignment because, primarily, "Capital One knew that the vehicle had already been taken, clear evidence that the party it attempted to assign the paper back to would not honor any contract." Pl.'s Resp. at 4-5. Even assuming that Toney's October 6 phone call to Capital One provided sufficient basis for Capital One to "know" the car had been taken, "termination" is "the act of ending something" or "conclusion or discontinuance."

6

*Black's Law Dictionary* (9th ed. 2009). "Assignment," meanwhile, is "the transfer of rights or property." *Id.* Toney does not cite, nor did research reveal, a single case characterizing the reassignment of a loan as an "adverse action" for purposes of the Equal Credit Opportunity Act. Based on the facts alleged, the car dealership, not Capital One, made the ultimate decision to repossess the car and terminate financing. Compl. ¶¶ 55, 60, 61; *see also Love v. O'Connor Chevrolet, Inc.*, No. 05 C 1980, 2006 WL 2024239, at *5 (N.D. Ill. July 11, 2006) ("it is the refusal to grant credit—not repossession—that triggers the obligation under ECOA to send an adverse action notice").

Additionally, Capital One's actions in this case do not appear to be the kind of adverse credit decisions the statute contemplates subjecting to regulation. The Act's "strict" notice requirement has twin aims: to discourage discrimination in lending by requiring creditors to explain their credit decisions, and to help rejected credit applicants understand where and how their credit status is deficient. *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 977 (7th Cir. 2004). The latter also gives consumers an opportunity to rectify mistakes "[i]n those cases where the creditor may have acted on misinformation or inadequate information." *Id.* In this case, Toney's own actions alerted Capital One to the potential credit issues, including that the dealership significantly overstated her income on the loan application. Compl. ¶ 46.

## B.

Even if Capital One's reassignment could constitute an "adverse action" under the statute, Toney would still fail to state a claim under Equal Credit Opportunity Act

7

because the Federal Reserve Board regulations explicitly state that "[a] change in the terms of an account expressly agreed to by an applicant" is *not* an adverse action. 12 C.F.R. § 202.2(c)(2)(i). In addition, anything that falls into both the "adverse" and "not adverse" categories is *not* an adverse action. § 202(c)(3). Capital One's reassignment of the car loan is not adverse because Toney expressly agreed to it in the financing contract. *See* R. 46-1, Def.'s Exh. A.

At this stage, the Court typically would be confined to Toney's complaint, which did not attach a copy of the contract. *McCready v. eBay*, 453 F.3d 882, 891 (7th Cir. 2006). Indeed, Toney alleges that she did not have a copy of the contract. Compl. ¶ 37; R. 48 at 7. However, the Court may consider the contract here without converting Capital One's motion to dismiss into a motion for summary judgment because the contract is "referred to in the plaintiff's complaint and [is] central to [her] claim." *McCready*, 453 F.3d at 891-92 (citing *188 LLC v. Trinity Indus., Inc.*, 300 F. 3d 730, 735 (7th Cir. 2002)). Toney's lawsuit revolves around the contract; the complaint refers to it repeatedly and the defense included a copy in its motion to dismiss. In a footnote, Toney raises a potential inconsistency in the document, Pl.'s Resp. at 7, but she does not argue that she did not agree to the reassignment provision. Thus, the inconsistency she mentions is irrelevant for the purposes of this motion.

It is true that the section of the contract detailing Capital One's right to reassign the contract is written in small print. Def.'s Exh. A at 2. However, it is part of the contract Toney signed, and it gives Capital One the right to reassign the loan in the event the dealership breaches its representations and warranties. *Id.*

8

Accordingly, Toney fails to state a claim under the Equal Credit Opportunity Act, and Capital One's motion to dismiss Count 2 is granted.

## IV.

Capital One also moves to dismiss Toney's unfair business practices claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act). The Consumer Fraud Act "is a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). Plaintiffs may recover under the Consumer Fraud Act for "unfair as well as deceptive conduct," *id.*, and they can allege that conduct is unfair under the Act without alleging that it is deceptive. *Saunders v. Michigan Ave. Nat'l Bank*, 662 N.E.2d 602, 608 (Ill. App. Ct. 1996). Toney claims that Capital One violated the Consumer Fraud Act on two separate occasions. The Court will consider them in turn.

Plaintiffs must prove five elements to state a cause of action under Consumer Fraud Act: "(1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception." *Dubey v. Pub. Storage, Inc.*, 918 N.E.2d 265, 277 (Ill. App. Ct. 2009).

To determine whether a course of conduct or act is unfair, the Consumer Fraud Act mandates that courts consider "the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade

9

Commission Act." 815 ILCS 505/2. In *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233 (1972), the Supreme Court "cited with approval the published statement of factors" the FTC considers in measuring unfairness. *Robinson*, 775 N.E.2d at 960-61 (citing *Sperry*, 405 U.S. at 244 n.5). These factors are (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers. *Sperry*, 405 U.S. at 244 n.5; *see Robinson*, 775 N.E.2d at 960-61; *Saunders*, 662 N.E.2d at 608 (but also noting that "Illinois courts determine whether conduct is unfair under the Consumer Fraud Act on a case-by-case basis"). "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 775 N.E.2d at 961.

First, Toney alleges that Capital One's conduct was unfair because Capital One withdrew a loan payment from her bank account on October 6—after she had already spoken to Capital One representatives about the car dealership's suspicious conduct and informed Capital One that the dealership had lied about Toney's income. Compl. ¶ 93. Toney further alleges that the October 6 withdrawal was unfair because she had called Capital One that same day to tell them she no longer had possession of the car. *Id.* ¶ 94. Capital One argues that the withdrawal is not unfair conduct under the Consumer Fraud Act because it did not offend public policy, was not immoral, unethical, oppressive, or unscrupulous, and did not cause Toney substantial injury. Def.'s Br. at 8.

Though Toney's complaint need not contain detailed factual allegations, it must offer more than legal conclusions or "a formulaic recitation of the elements of a cause

10

of action." *Iqbal*, 556 U.S. 662, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). To survive a motion to dismiss, the complaint must contain "sufficient factual matter" that provides "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The first factor Illinois courts weigh in considering an unfair conduct claim is whether the conduct "offended public policy." *Robinson*, 775 N.E.2d at 960-61. Conduct can satisfy this element if it is unlawful or, if not unlawful, nonetheless "offends public policy as established by statutes, the common law or otherwise, or, in other words, whether it is at least within the penumbra of some established concept of unfairness." *Ekl v. Knecht*, 585 N.E.2d 156, 163 (Ill. App. Ct. 1991); *see Stonecrafters v. Foxfire Printing and Packaging*, 633 F. Supp.2d 610, 616 (N.D. Ill. 2009); *Garrett v. Rentgrow, Inc.*, No. 04 C 8309, 2005 WL 1563162, at *3 (N.D. Ill. July 1, 2005).

It is unclear from the complaint how Capital One offended public policy by withdrawing the money from Toney's account on October 6. To be sure, the complaint also claims that Capital One violated a federal statute, *see supra*, but Toney's Equal Credit Opportunity Act claim is not connected with the October 6 account withdrawal. Furthermore, a lender automatically withdrawing money from a checking account to satisfy what was at the time still a valid loan obligation, despite the concerns Toney raised, *see* Compl. ¶ 56, but which Capital One had not yet verified (only one day elapsed between her reported complaints and the funds transfer), does not offend public policy or fall "within the penumbra of some established concept of unfairness." *Ekl*, 585 N.E.2d at 163.

11

As a result, the remaining two factors of the three-factor test for unfairness must be present to an even greater extent. *See Robinson*, 775 N.E.2d at 961. The second factor is whether the alleged unfair practice is immoral, unethical, or oppressive. Generally, a trade practice satisfies the second prong of the Consumer Fraud Act's unfairness test when it is so oppressive that it "leave[s] the consumer with little alternative except to submit to it." *Galvan v. Northwestern Mem'l Hosp.*, 888 N.E.2d 529, 536 (Ill. App. Ct. 2008) (quoting *Robinson*, 775 N.E.2d at 961). Here, Toney has not alleged facts demonstrating that Capital One's actions satisfy this prong and are "so unfair as to allow a recovery." *Robinson*, 775 N.E.2d at 962.

Specifically, Toney has not alleged how Capital One deprived her of meaningful choice or acted coercively in withdrawing the money from her bank account on October 6. (This is, notably, separate from the car dealership's conduct in selling Toney the car in the first place. *See* Compl. ¶¶ 14-47.) Based on Toney's allegations, Capital One's account withdrawal was a *scheduled* payment to satisfy an existing loan, *id.* ¶ 56, not the type of oppressive activity the Consumer Fraud Act contemplates. *See, e.g., Saunders*, 662 N.E.2d at 608-09 (bank's $20 per day overdraft fee not unfair, as it was clearly listed when plaintiff signed up for checking account). Capital One was not required to stand down from collecting the scheduled payment (or more to the point, did not act unethically or oppressively by collecting) merely because one of its debtors had contended—without some additional verification—that the loan's originator had acted suspiciously.

12

With regard to the "substantial injury" factor, Toney comes closest to satisfying this factor, but not sufficiently to overcome the lack of any public-policy violation and the absence of an unethical or oppressive practice. Under the Consumer Fraud Act, an injury generally must "(1) be substantial; (2) not be weighed by any countervailing benefits to consumers or competition that the practice produces; and (3) be an injury that consumers themselves could not reasonably have avoided." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). This requirement is part of the first element needed to prove unfair conduct under Consumer Fraud Act, but also overlaps with the fourth element (actual damages). *Dubey*, 918 N.E.2d at 277.

Because Toney has not satisfied the first two elements of an unfairness claim under the Consumer Fraud Act, her injury would have to be particularly substantial to state a claim under the Act. *See Robinson*, 775 N.E.2d at 961. In the complaint, Toney alleges that Capital One withdrew $592.16 from her bank account via an "auto check payment." Compl. ¶ 56. But the complaint also alleges that, around one month later, Capital One sent Toney an "overpayment refund" of $193.59, *id.* ¶ 62, so the net injury was around $400. The complaint does not specify any other injuries Toney sustained as the result of Capital One's conduct in this instance. The extent of the injury pales in comparison to other injuries deemed substantial, *e.g.*, *Demitro v. General Motors Acceptance Corp*, 902 N.E.2d 1163, 1166, 1168-69 (Ill. App. Ct. 2009) ($7,560 in compensatory damages); *Dubey*, 918 N.E.2d at 273, 278 ($69,145 in compensatory damages), although it is true that the cases do not purport to set a bright-line minimum dollar amount for an injury to count as "substantial," and to

13

Toney, the $400 net loss (and the loss of the use of $593) could be considered to be personally substantial. But the problem is that the other two factors— violation of public policy and unethical or oppressive conduct—are entirely absent, so permitting a claim here threatens to turn a run-of-the-mill breach of contract claim into a Consumer Fraud Act claim.

Toney also alleges that Capital One "engaged in unfair business practices" and violated Consumer Fraud Act by failing to return her loan payment—the $592.16 withdrawn on October 6—in its entirety. Compl. ¶ 95. Instead, as noted above, on around November 10, 2008, Capital One sent Toney an "overpayment refund" of $193.59. *Id.* ¶ 62. As with the October 6 withdrawal, it is unclear from the complaint how Capital One's refusal to refund the entirety of a scheduled payment offended public policy (as distinct from some other liability theory, such as breach of contract). Therefore, here too the remaining two factors of the three-factor test for unfairness—that the alleged unfair practice was immoral, unethical, or oppressive, and that it caused substantial injury—must be present to an even greater extent. *See Robinson*, 775 N.E.2d at 961. And just as the withdrawal did not present those factors, the less-than-full refund does not establish immoral, unethical, or oppressive conduct, where Toney still owed, as of the time of the refund, the balance of the loan and had not definitively established to Capital One that the underlying loan should be rescinded in its entirety. The partial refund alone does not suggest conduct so oppressive that it "leave[s] the consumer with little alternative except to submit to it." *Robinson*, 775 N.E.2d at 961. Finally, the net loss of $400 might present a substantial

14

injury, but overall the alleged conduct does not "sufficiently implicate[] consumer protection concerns." *Demitro*, 902 N.E.2d at 1169 (citing *People ex rel. Hartigan*, 575 N.E.2d 1378 (Ill. App. Ct. 1991)). Capital One's alleged conduct here—withdrawing a car loan payment from Toney's account and returning some of it to her—is not analogous to the unethical and substantially injurious practices that violate the Consumer Fraud Act. Thus, Toney has failed to state a claim under the Consumer Fraud Act, and Capital One's motion to dismiss Count 3 is granted.

## V.

For the reasons discussed above, Capital One's motion to dismiss [R. 46] is granted.

ENTERED:

*/s/ Edmond E. Chang*

_____
Honorable Edmond E. Chang
United States District Judge

DATE: February 21, 2012

15